THE CITY AND SUBURBAN RAILWAY CO. v. WALDHAUR.

Though the preponderance of evidence seems to be against the verdict, there is enough to support it ; the refusal to grant a second new trial was not an abuse of discretion ; and the damages assessed were not excessive.

· March 19, 1890.

Damages. New trial. Verdict. Evidence. Before Judge HARDEN. City court of Savannah. June term, 1889.

On the afternoon of Sunday, December 25, 1887, about half past three o'clock, the plaintiff, a boy of seven years, obtained permission of his mother to ride

his velocipede on a pavement near her house on Whit-
aker street in Savannah. He was driving his machine
over the defendant's track at or near the crossing of
other streets intersecting Whitaker, and was run over
by defendant's street-car pulled by two mules, and in-
jured. He brought suit for damages and recovered a
verdict for $4,500. This was set aside on the defend-
ant's motion ; and on the second trial the verdict was in
plaintiff's favor for $2,500. The company again moved
for a new trial on the grounds that the verdict was ex-
cessive, contrary to the evidence, the weight of evidence
and the principles of justice and equity, and without
sufficient evidence to support it. The motion was de-
nied, and exception was taken.

The injuries sustained by the boy were two compound
double fractures in his leg and thigh, a wound in the
thigh which made a large scar, a split ear, and a shock
to his system. A competent physician attended him
immediately after the injury, and did not expect him to
live until the next morning; thought his recovery was
marvellous; had to resort to unusually painful treat-
ment to save his life. He was under treatment for
about two and a half months, after which he was well
enough to walk; but his legs were somewhat shortened,
the right one about a fourth of an inch with a
slight backward bend below the knee; the left thigh
about three fourths of an inch shortened. He endured
intense suffering. His evidence indicates that his in-
juries will have some permanent effects ; while that of
the defendant would show that they will not probably
diminish his earning capacity or his growth, or deform
him permanently. The car (fifteen to seventeen feet in
length) was driven by a young colored man, and was
accompanied by a conductor. The driver saw the boy
as he rapidly approached the track on his velocipede,
and blew his mouth-whistle ; did not think the boy

would try to cross, and tried to stop the car when it was too late to prevent the collision. The boy also must have seen the car approaching, as he said to his mother, upon being picked up and handed to her, "He ran over my foot; he laughed and whipped his horses," and stuck to this statement. The car did stop after running over the boy, leaving him lying three to five feet in the rear. Some testimony indicates that after the brake was applied to the car-wheels, the mules became frightened and unmanageable, or tried to avoid trampling on plaintiff, each going sidewise around him. Testimony for the plaintiff tends to show that the brake was not in good order; while that for the defendant is strong to the contrary. The speed of the car was shown to be five or six miles per hour, the usual speed. In the testimony for the plaintiff it is stated that the car was behind time; but the conductor testified that it was on schedule time. After it ran over the plaintiff and stopped, the driver disappeared. A witness had threatened to knock him down if he did not run away; and the driver himself testified that he feared violence in the excitement which ensued. Two days afterwards he returned and went to work again for defendant. There was testimony that the driver put on brakes and holloaed to the mules as soon as the plaintiff left the sidewalk, but the mules plunged and dragged the car; that the driver was competent and attentive to his duties, and no accident had occurred before; that the mules had bells ringing on them; that the day was rainy and the track wet; and that the plaintiff came rapidly from the corner on his velocipede when the car was in fifteen or twenty feet of the crossing. The street was forty-five feet wide. There was also testimony that the plaintiff might have got across the track in safety, but that one of the wheels of his velocipede struck a paving-stone therein, turning it over and

throwing him off before the mules reached him.   Some testimony indicated that he was habitually reckless, and that his mother had been warned by another lady against allowing him to go out unattended; but this was denied.   She knew that he would have to cross the track in order to reach the pavement where he wanted to ride, but he was in sight of her house all the time.   According to some testimony for him, the car was about fifty feet from the crossing when he could have been seen leaving the sidewalk.   It was contrary to a city ordinance for any person to use a velocipede upon any of the sidewalks, squares or parks of the city, except when necessary to cross a sidewalk to enter a lot or building.

R. R. RICHARDS, for plaintiff in error.

CHARLTON & MACKALL and CLIFTON & BECKWITH, contra.

BLANDFORD, Justice.

A motion for a new trial was denied by the court, and the defendant excepted.   While the evidence is not very satisfactory to have authorized the jury to find the verdict they did, yet we cannot say there was no evidence to sustain the verdict, though we think the great preponderance of evidence was against it.   If the plaintiff was entitled to recover at all, the damages assessed by the jury were not excessive.   Inasmuch as there has been one new trial granted by the same judge in this case, and he having refused to grant a second new trial, we are not disposed to interfere with his discretion in so refusing.          *Judgment affirmed.*